ANDREW O'DAY *et al.* Plaintiffs in Error, *vs.* CHRISTO-
PHER COLUMBUS CRABB *et al.* Defendants in Error.

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. APPEALS AND ERRORS—*when the Supreme Court will not con-
sider weight of evidence.* Where a decree must be reversed and
the cause remanded for a new trial for errors intervening during
the course of the trial the Supreme Court will not express any
opinion as to the weight of the evidence.

2. WILLS—*certified transcript of testimony of subscribing wit-
nesses on probate is admissible in circuit court.* Under the Wills
act, which provides that on a will contest in chancery the certifi-
cate of the oath of the witnesses at the time of the first probate
shall be admitted as evidence, a certified transcript of the testi-
mony of the subscribing witnesses on the hearing in the probate
court is admissible, and the fact that one of the witnesses is dead
at the time of the trial in the circuit court and the other is beyond
the jurisdiction of the court is not material.

3. SAME—*what question as to undue influence is not proper.*
The question asked of a subscribing witness in a proceeding to
probate the will, whether any fraud, duress or undue influence
was used or applied to cause the testatrix to subscribe her name
to the instrument, and the answer of the witness that there was
none whatever, are improper, and if specific objections had been
made when the transcript of the testimony was read in the cir-
cuit court it would have been the duty of the court to sustain
the objections.

4. SAME—*when proper to show financial condition of heirs of
testator—rule as to beneficiary not an heir.* The financial condi-
tion of those having claims upon a testator's bounty may be taken
into consideration in connection with the will itself in determin-
ing the question of testamentary capacity, provided such financial
condition is shown to have been known to the testator; but the
court may, in any event, exclude testimony as to the financial
condition of a beneficiary who is not a relative of the testator.

5. SAME—*contestants cannot show that the testator previously
had made a different will.* Complainants in a proceeding to con-
test a will cannot show that the testator had made a different will
at a previous time, since a person has the right to change his
mind in reference to the disposition of the property, and the mere
fact that he does so has no bearing upon the question of his men-
tal capacity.

6. SAME—*when the proponents' proof in rebuttal is properly admitted.* In a will contest case, where the evidence of the proponents in rebuttal is designed to meet that produced by the contestants, the fact that it has a bearing upon the mental capacity of the testatrix does not render it improper if it is not of such a nature as should have been anticipated by the proponents.

7. SAME—*when admission of coroner's verdict as to cause of death is harmless.* Where both parties to a proceeding to contest a will agree that the testatrix died of pneumonia but the contestants claim that the pneumonia was caused by administering a drug, the admission in evidence of the coroner's verdict that the testatrix died of pneumonia is harmless.

8. SAME—*question as to existence of a fiduciary relationship should be left to the jury.* An instruction which attempts to state the rule as to the burden of proof where one of the beneficiaries sustained a fiduciary relationship to the deceased, and which assumes the existence of such relationship without leaving that question for determination by the jury, is erroneous.

9. SAME—*instruction should not ignore undue influence where that is one of principal grounds of contest.* An instruction directing a verdict sustaining the will if the jury believe, from the evidence, that the testatrix, at the time the instrument was signed, had mind and memory sufficient to transact ordinary business affairs and knew and understood the business in which she was then engaged, is improper where the element of undue influence, which was one of the principal grounds of contest, is ignored.

10. SAME—*where execution of will is one of the grounds of contest it should not be assumed in instructions.* Where there is evidence tending to sustain the contestants' claim that the signature to the will is not genuine, the instructions for the proponents should not assume the execution of the instrument.

11. INSTRUCTIONS—*when party cannot complain of assumption in instructions.* That certain instructions given at the request of the proponents assume matter which should be left to the jury is not ground for complaint by the contestants, where many of the instructions given at their request contain the same assumption.

12. SAME—*instruction should contain all elements necessary to warrant verdict, where verdict is directed.* Where an instruction directs a verdict all the elements necessary to warrant such verdict must be contained in the instruction.

13. SAME—*jury should not be told that executor is entitled to employ expert witnesses.* Where a medical witness, testifying in support of a will, states that he expects to receive $100 a day for his services as a witness, opposite counsel have a right to argue

that the fact that medical witnesses were receiving so much money for testifying affected their credibility, and it is error to give an instruction sanctioning the right of the executor to employ expert witnesses, and stating that no inference prejudicial to the executor should be drawn from the fact that he engages in the defense of the will.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

SAMUEL C. HERREN, for plaintiffs in error.

CRUICE & LANGILLE, and ARTHUR E. MAYO, (DANIEL L. CRUICE, and WEST & ECKHART, of counsel,) for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Mary Spiegel died March 27, 1913, at the home of Christopher Columbus Crabb, one of the defendants in error, in the city of Chicago, leaving a paper purporting to be her last will and testament. This paper was admitted to probate in the probate court of Cook county. From that order an appeal was taken to the circuit court, where a like order admitting the will to probate was entered. Thereafter plaintiffs in error filed their bill in the circuit court of Cook county to set aside the probate of this will on the grounds that the deceased had never executed the instrument, that at the time the instrument purports to have been executed the deceased was mentally incompetent to make a will, and that at the time the will purports to have been executed the deceased was subject to the undue influence of Christopher Columbus Crabb, his wife, and other legatees named in the will. Upon the trial in the circuit court the jury returned a verdict finding that the paper in question was the last will and testament of Mary Spiegel, deceased. A decree was entered accordingly, and this writ of error has been sued out from this court to review that decree.

Mrs. Spiegel was a resident of the city of Chicago and at the time of her death resided about two blocks from the home of Crabb. She left an estate of approximately $90,000. For a number of years prior to her death Crabb had advised her in a business way and had assisted her in making investments of her money. She was not related to him in any way, but it appears that she was a frequent visitor at his home and that he and his wife were on friendly terms with her and had shown her much attention. On March 20, 1913, Mrs. Spiegel, then in good health, visited the Crabb home, where she took dinner with Mr. and Mrs. Crabb and other guests on the evening of that day. After dinner she was taken ill. Pneumonia developed and she died on the morning of March 27. She left surviving her four brothers, (Andrew, Jeremiah, Cornelius and John O'Day,) and the sons and daughters of two deceased brothers, (Thomas and James O'Day,) and of one deceased sister, (Helen Cummings,) as her only heirs-at-law. The evidence discloses that she was on friendly terms with her relatives but was more friendly with some of them than with others. It is not shown, however, with which of her relatives she felt the least friendly. At the time Mrs. Spiegel was taken sick at the Crabb home Christopher Columbus Crabb was suffering from some ailment and his family physician was in attendance upon him. This physician was called to treat Mrs. Spiegel and attended her until her death. It does not appear that any of Mrs. Spiegel's relatives were notified of her condition until the evening of March 26,—the day before she died. On that evening one of her brothers was notified of his sister's illness and in company with his wife and daughter he went to the Crabb home. On arriving there they found Mrs. Spiegel unconscious and unable to speak to them. They were permitted to remain in the room but a few minutes. The daughter, realizing that her aunt was in a dying condition, asked permission to remain there over night, but this request was re-

fused. She thereupon suggested to her mother to ask to be allowed to stay, but Mrs. Crabb informed them that she intended to lock up the house for the night and they must go. This was the only occasion when any of the relatives of Mrs. Spiegel were permitted to see her during her illness, and, so far as the record discloses, this brother was the only one of the relatives notified of Mrs. Spiegel's condition prior to her death. On the afternoon of March 26 Mrs. Crabb sent for Arnold Tripp, an attorney, to come to the residence. He arrived about 3.45 o'clock and remained there about half an hour. A trained nurse arrived during the afternoon. There is some conflict in the testimony as to whether she arrived before Tripp came or after he had departed. The evidence on the part of the proponents shows that the nurse arrived prior to the departure of Tripp. While there, Tripp prepared the will in question, and it was witnessed by Tripp, Mrs. Anna Kraai, the nurse, and Bertram S. Purinton, a friend of Crabb, who had been summoned for that purpose by Mrs. Crabb. These witnesses all testify that the instrument was executed by Mrs. Spiegel in their presence. By this instrument the sum of $2500 is bequeathed to each of the brothers Andrew, Cornelius and Jeremiah and the interest on $2500 is bequeathed to the brother John, then an inmate of the Dunning asylum, for and during his natural life. These are the only bequests made to any of her relatives or heirs-at-law. To Mary Weaver was bequeathed the interest on the sum of $2500 for and during her natural life; to Joseph Collosky, Sr., was bequeathed the sum of $1000; to Elizabeth Crabb, the wife of Christopher Columbus Crabb, the sum of $5000, and to George E. Felton $5000 in South Side Railroad bonds. All the residue and remainder of her estate was devised and bequeathed to Christopher Columbus Crabb, who was also made executor without bond. Collosky was not related in any way to Mrs. Spiegel but was one of the intimate friends of Crabb and seems to have

been constantly at his home, where he frequently met Mrs. Spiegel. What connection Mary Weaver and George E. Felton had with the deceased, if any, does not appear.

It is insisted that the verdict of the jury and the decree of the court are so contrary to the clear preponderance of the evidence that the decree should be reversed for that reason, alone. The evidence on the part of the contestants and all the facts which have any bearing upon the issues tend to create considerable doubt as to the testamentary capacity of Mrs. Spiegel at the time the will purports to have been executed and as to whether she was free from undue influence on the part of certain of the beneficiaries named in the instrument at the time of its execution, but as the decree must be reversed and the cause remanded for a new trial for errors intervening during the course of the trial we will refrain from expressing any opinion as to the weight of the evidence.

The probate of the will was resisted in the probate and circuit courts. The testimony of the subscribing witnesses was taken in the probate court upon questions propounded to them by counsel for the respective parties, and a transcript of the testimony of Arnold Tripp and Mrs. Kraai was offered in the circuit court by proponents in making out their case in chief, and it is now insisted that the admission of this transcript was error. Tripp had died since the trial of the case in the probate court, and it was represented by counsel for proponents that Mrs. Kraai was without the jurisdiction of the court. These facts, however, did not affect the right of proponents to introduce the transcript of this testimony in evidence. Under the Wills act, which provides that on a will contest in chancery the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence, a certified transcript of the testimony of the subscribing witnesses on the hearing in the probate court is admissible; and this is true notwithstanding the witnesses themselves may also have testi-

fied to the same effect on the trial on the contest of the will. *Baker* v. *Baker,* 202 Ill. 595; *Kellan* v. *Kellan,* 258 id. 256.

Upon his examination in the probate court Tripp was asked whether any fraud, duress or undue influence was used or applied to cause Mrs. Spiegel to subscribe her name to the instrument, to which he responded there was none whatever. Mrs. Kraai was asked virtually the same question but in a different form, the inquiry addressed to her being whether any such fraud, duress or undue influence was used or practiced to her knowledge. The question asked of Tripp, and his answer thereto, were improper, and had counsel objected to this specific question and answer when the transcript of the testimony was being read to the jury the court should have sustained the objection. (*Adams* v. *First M. E. Church,* 251 Ill. 268.) No specific objection was made, however, to this question, either upon the reading of the transcript of the testimony of Tripp or Mrs. Kraai.

Nellie Heffernan, a niece of Mrs. Spiegel, was called on behalf of contestants and was asked concerning the financial condition of Andrew O'Day and of her father, two of the brothers of Mrs. Spiegel, at the time of her death. Objections to these questions were sustained. While the deduction might fairly be drawn from the record that the court meant to hold that in no event would this proof be competent, from the state of the record we must hold there was no error in this ruling of the court. It was proper to show the financial condition of the heirs-at-law of Mrs. Spiegel provided the same was known to her, as the known financial condition of those having claims upon a testator's bounty may be taken into consideration in connection with the will itself in determining the question of testamentary capacity. (*Kern* v. *Meyer,* 264 Ill. 560.) The contestants did not show, or offer to show, that the financial condition of her brothers was known to Mrs. Spiegel. The essential part of such proof is to show that the testatrix had knowl-

edge of such financial condition, and in the absence of this proof the objections were properly sustained.

The action of the court in refusing to permit contestants to show the financial condition of Christopher Columbus Crabb is also complained of. There was no error in excluding this testimony. There is no analogy between disinheriting one who is in an impoverished condition and who has a claim upon the testator's bounty, and in favoring one who is not a relative and who may be a person of wealth and affluence.

Complaint is made of the action of the court in refusing to admit proof of a former will whereby Mrs. Spiegel had left the major portion of her estate to her relatives and heirs-at-law. This proof was properly excluded. It is proper to show the contents of a former will on behalf of the proponents in a case of this kind where such former will was drawn along the same general lines as the instrument contested, in order to show that the testator had a constant and enduring scheme for the distribution of his property, and thus refute the charge of lack of testamentary capacity or undue influence. There is no analogy between such a case and the one here presented, where it is attempted to show on the part of the contestants that the testatrix had made a different will at a different time. Mrs. Spiegel had the right at any time to change her mind in reference to the disposition of her property, and the mere fact that she did change her mind would have no bearing whatever upon the question of her mental capacity.

It is contended that the court erred in permitting proponents to make out their case in respect to mental capacity, in rebuttal. There is no foundation for this charge. The evidence of proponents in rebuttal was designed to meet that produced by contestants, and while it had a bearing on the mental capacity of the testatrix it was not of such a nature as should have been anticipated by proponents. It was proper rebuttal and the court did not err in admitting it.

It was contended on the trial that the pneumonia from which Mrs. Spiegel suffered was produced by a drug administered to her by Dr. Miller and Mrs. Purinton. This charge evidently was made soon after Mrs. Spiegel's death, as Crabb procured an inquest to be held over her body. The coroner's jury returned a verdict finding that Mrs. Spiegel died of pneumonia. Proponents offered the coroner's verdict in evidence, and it is claimed that its admission was error. The contestants, while claiming that the disease was produced by the administration of ether, agree with the proponents that Mrs. Spiegel died of pneumonia. The verdict of the coroner's jury, therefore, was in accord with the theory of both proponents and contestants as to the cause of death. It threw no light whatever upon the charge made by the contestants that pneumonia was produced by the administration of a drug. The admission of this evidence was harmless.

A large number of instructions was asked and many were given on behalf of both proponents and contestants, the number of the last instruction appearing in the abstract being 66. The action of the court in giving many of the instructions submitted by the proponents and in refusing to give many of those submitted by the contestants is complained of. It was entirely unnecessary to burden the court with the labor of examining the large number of instructions offered in this case. The issues were simple and well defined. Many of the instructions refused are long, involved and confusing, and we will not attempt to discuss them. It is contended that the court erred in refusing some of these instructions which attempted to state the rule as to the burden of proof where one of the beneficiaries sustained a fiduciary relationship to the deceased. If the jury believed, from the evidence, that Christopher Columbus Crabb sustained a confidential and fiduciary relationship to Mrs. Spiegel at the time of the execution of the will and that he was in some manner directly connected

with the making of the will, then, under the law, the burden rested upon him to show, by clear and convincing proof, that no undue influence was exercised by him upon Mrs. Spiegel to procure the execution of the instrument in question. (*In re will of Barry,* 219 Ill. 391; *Yess* v. *Yess,* 255 id. 414.) This was a proper matter upon which to instruct the jury. The refused instructions dealing with this phase of the case were erroneous in that they assumed that such a fiduciary relationship existed, without leaving that question for determination by the jury.

In rebuttal the proponents produced various medical expert witnesses who testified regarding the effect of pneumonia upon the mental condition of the patient and the presence or absence of delirium under certain conditions. One of these witnesses testified that he expected to receive the sum of $100 per day for his services as a witness. Proponents' instruction No. 3 told the jury that it is the duty of an executor to defend a will when attacked, and that in such defense he is entitled to employ competent counsel, expert witnesses, etc., and to do the things necessary to lawfully defend the will, and no inference prejudicial to the executor should be drawn from the fact that he engages in the defense of the will. It was error to give this instruction. Neither an executor nor any other party to a suit is entitled, as a matter of right, to employ expert witnesses or witnesses of any other kind. The processes of the court are always available to a party to a suit, and he can compel the attendance of any person as a witness whom he desires to have testify. A medical witness is entitled to no more consideration than any other witness, and whether he can be compelled to testify in no instance depends upon whether he is being paid a fee in addition to the witness fee allowed by law. (*Dixon* v. *People,* 168 Ill. 179.) The contestants had the right to argue to the jury that the fact that the medical witnesses for proponents were receiving $100 per day for their services affected their credibility.

This instruction deprived them of the benefit of that right, and, in effect, gave these witnesses a superior standing in court to which they were not entitled.

Instructions 11, 29 and 30 on behalf of proponents each directed a verdict, and each, in effect, told the jury that if they believed, from the evidence, that Mrs. Spiegel, at the time she signed the instrument, had mind and memory sufficient to transact ordinary business affairs and knew and understood the business in which she was then engaged, they should find the paper writing to be her will. These instructions entirely ignored the element of undue influence,—one of the principal grounds of contest,—and under the well known rule that where a verdict is directed all the elements necessary to warrant such verdict must be contained in the instruction, the giving of these instructions was error.

A number of instructions on the part of the proponents assumed the execution of the instrument. The evidence on the part of the contestants tended to show that the signature to the instrument was not the signature of Mrs. Spiegel. A number of the witnesses testified that the name appended to the instrument was spelled S-p-e-i-g-e-l, whereas the name of the deceased was properly spelled S-p-i-e-g-e-l, and she always spelled it thus. Mrs. Heffernan testified that the name "Mary Speigel" attached to the instrument was not in the handwriting of her aunt. Under this state of the record, and it being one of the contentions of the contestants that Mrs. Spiegel did not execute the instrument, it was not proper to assume that the instrument had been executed by her. The contestants are not entitled to complain of this action of the court, however, as many of the instructions given on their part contained the same assumption.

For the errors indicated the decree of the circuit court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*