(No. 14242.—Reversed and remanded.)

LULU TURNBULL *et al.* Appellees, *vs.* ARTHUR W. BUTTERFIELD, Exr. Appellant.

*Opinion filed October 21, 1922.*

1. WILLS—*jury should not be instructed to consider testatrix's source of title.* In a will contest the jury should not be instructed that in determining the mental capacity of the testatrix they should consider the source of her title with the other evidence in the case; and such instruction is particularly damaging where the evidence shows that the testatrix derived her title from her husband, who was the father of the parties to the contest, among whom the testatrix had divided the property unequally.

2. SAME—*when instruction as to discrimination against heirs is erroneous in a will contest.* In a will contest case an instruction stating that the jury has "a right to take into consideration, together with all the other evidence in the case, the fact that said Lydia A. Butterfield made an unequal division of her estate and discriminated against the contestants," is erroneous in assuming that there is an unjust discrimination, and in giving the jury an excuse to determine whether the will is a just and proper disposition of the property, which it has no power to do.

3. SAME—*extent to which inequality of distribution may be considered by jury in will contest.* While inequality in the distribution of property may, in connection with other evidence and circumstances proved on that issue, be considered on the question of soundness of mind or undue influence in a will contest, inequality

of distribution is not primarily to be considered as evidence tending to prove unsoundness of mind or undue influence.

4. SAME—*knowledge of consequences or probable result of will is not required.* While a testator or testatrix must, at the time the will is executed, have the capacity to comprehend all that the will contains, the rule does not require actual knowledge or comprehension of all the direct consequences and probable result of the will.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

L. T. GRAHAM, MUMFORD & MUMFORD, and STEVENS & HERNDON, for appellant

WILLIAMS & WILLIAMS, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellees, Lulu Turnbull and Ethel Burlend, filed their bill in the circuit court of Pike county to set aside the will of their mother, Lydia A. Butterfield, on the ground of testamentary incapacity and undue influence of appellant, Arthur W. Butterfield, brother of appellees. Appellant and other beneficiaries under the will were made parties defendant. A verdict was returned and a decree entered thereon setting aside the will. This appeal followed.

The property of the testatrix consisted of real estate, household furniture and personal effects. By her will she devised to the appellant, her son, a farm of 175 acres and a house and lot in the village of Griggsville, of a total value of approximately $27,000, and to appellees, her two daughters, each an undivided half interest in a farm of 145 acres, of the value of approximately $11,000. Personal effects, household furniture, etc., were divided among the two daughters and a grand-daughter. The undisputed evidence in the record shows that the farm lands described in the will of the testatrix were acquired during the lifetime of her husband, Henry W. Butterfield, and that the title stood in his name until a short time before his death, when he

transferred it to her. A few years prior to his death, in 1915, he and testatrix moved to Griggsville. The appellant, their son, remained on the home farm. It appears that in stocking up the farm the son went into debt to the extent of approximately $10,000; that his father, and later the testatrix, became surety on his notes; that these were outstanding when the testatrix died and were filed as a claim against her estate. It appears, also, that appellant paid off a mortgage on the farm during his tenancy. There appears to have been no friction or ill-feeling of any character among the members of the family during the life of the testatrix. The will was executed on February 17, 1919. The testatrix was seventy-five years of age at that time. She lived nearly a year thereafter. She appears to have been an educated woman,—was a college graduate and in the earlier years of her life had taught in the public schools of Pittsfield, Illinois, and was considered a good business woman. There was no evidence of undue influence, and that issue was withdrawn from the jury before they retired to consider the case. The issue of testamentary capacity was sharply contested, proponent having offered the testimony of seventeen witnesses and contestants twenty-nine on that issue, practically all of whom gave opinions touching the soundness of mind of the testatrix during the years 1918 and 1919, basing their opinions upon varying degrees of intimacy or opportunity to observe. For most part the testimony of witnesses on both sides showed that they had definite opinions touching the testamentary capacity of the testatrix.

It has always been the rule that where the evidence is sharply conflicting it is necessary that the jury be properly instructed. Appellant complains of the fifth, sixth, ninth, twelfth and thirteenth instructions given on behalf of the contestants. The fifth instruction told the jury that contestants, (appellees,) together with the proponent, (appellant,) were the lawful heirs of the testatrix and that with-

out a will her property would descend to such heirs in equal parts, and that if the jury believed that at the time of the execution of the alleged will the testatrix was feeble in body and mind from sickness, old age or otherwise, and that she attempted to dispose of her property in a manner different from that which it would be disposed of at law, and that she was of unsound mind and incapable of clearly apprehending, knowing and understanding the business in which she was engaged, the nature and extent of her property or intelligently disposing of the same, the verdict of the jury should be that the alleged will was not the last will and testament of the testatrix. This instruction is not well drawn and should not have been given.

The sixth instruction told the jury that in determining the mental capacity of the testatrix they should take into consideration, with the other evidence in the case, the condition of her estate, the source of her title, extent and character of her property, her heirs and her relation to them, also the fact that she made an unequal disposition of her estate, her age and condition of health and the circumstances under which the will was made, and after considering all such testimony determine whether or not she was capable of intelligently and rationally disposing of her estate by will. This instruction was erroneous. The question as to where her estate came from had nothing to do with the matter of her testamentary capacity, and the instruction on this point was evidently offered for the purpose of calling to the minds of the jurors the fact that this property had been deeded to the testatrix by her husband, the father of the parties to this proceeding, thereby emphasizing a matter with which the jury had nothing to do,—that is, the question of the fairness of the distribution of the property under her will.

The ninth instruction is as follows:

"The court instructs the jury that in determining the question of mental capacity in this case you have a right to take into consideration, together with all the other evidence

in the case, the fact that said Lydia A. Butterfield made an unequal division of her estate and discriminated against the contestants, Lulu Turnbull and Ethel Burlend, and in favor of the proponent, Arthur W. Butterfield."

The twelfth instruction was a re-statement of the two propositions contained in instructions 6 and 9 referred to, stating that the jury were to take such facts into consideration, together with all the other evidence, in determining the mental capacity of the testatrix. The giving of these instructions was prejudicial error. The average juror could draw but one inference from them. The jury were told that the children were equal heirs, and that they were to consider the fact that the testatrix received this property from the father of the children. They were also told that the children had been discriminated against by an unequal division of the property. To consider this was clearly outside the province of the jury. Even though the question of discrimination against the appellant was a matter proper to be given to the jury, it was clearly error for the court to assume that appellees had been discriminated against. An unequal division of property is not necessarily a discrimination. There may be many reasons why property should not be divided equally among the heirs of the maker of a will. In fact, circumstances frequently arise where to divide property equally among one's children would be a discrimination by reason of the relation of the parties or facts and circumstances occurring during the lifetime of the testator. In any event, it is error to say that an unequal division of property by will is a discrimination, in the sense in which that term would be understood by the average juror. That is not a matter with which the jury have anything to do. It is not an issue before them. These instructions gave the jury permission to consider the unequal distribution of the property and to adjust the inequalities of the will. They were told that these children were all three the heirs of both the father and mother, and the

jury were given the right to say that the property should have been equally divided.

In a will contest, where the will seems to have made an unequal division of property, there is a disposition in the mind of the average juror to hold such will invalid and to look for an excuse to do so, notwithstanding the law is that the testator may make such disposition of his property as he sees fit and may bestow his bounty where he wishes. This tendency on the part of jurors runs counter to the rule of law that they have nothing to do with the equity or inequity of a will and that the children of a testator have no property rights in the parent's property. These facts make it necessary that the jury be carefully instructed on the issue of mental soundness of the testator where such a will has been executed. This court has invariably condemned instructions which offer the jury an excuse to determine whether a will is a just and proper disposition of the property of the testator. *Carnahan* v. *Hamilton,* 265 Ill. 508; *Rowcliffe* v. *Belson,* 261 id. 566; *Brainard* v. *Brainard,* 259 id. 613; *Nieman* v. *Schnitker,* 181 id. 400.

In *Donnan* v. *Donnan,* 236 Ill. 341, an instruction was given telling the jury "that inequality and unreasonableness in a testamentary disposition of property, though not in itself conclusive evidence of unsoundness of mind or of undue influence, may be considered as a circumstance tending to show unsoundness of mind or undue influence in connection with all the other facts and circumstances proven in the case." This instruction was held to be error, for the reason that it, standing alone, was calculated to give the jury the impression that unequal distribution of the property of the testator among his children is to be considered as evidence tending to show unsoundness of mind or undue influence, it being there held that while inequality in the distribution of property may be, in connection with other evidence and circumstances proven, considered on the question of soundness of mind or undue influence, it has never been held to be

the rule that inequality of distribution of property was primarily, or of itself alone, to be considered as evidence tending to prove unsoundness of mind or undue influence. This court there said: "No presumption is raised against the validity of a will because of inequality in the distribution of property, nor, standing alone, is it to be considered as a circumstance against the validity of the will. The law is too well settled to require the citation of authority, that the owner of property may dispose of it by will in any manner he sees fit, to the exclusion of some or all of his children, and the justice or propriety of the disposition made of the property is not a question for courts and juries to pass upon, but, as we have said, it is only when other facts and circumstances are proven tending to show lack of mental capacity or undue influence that inequality in the provisions of the will becomes a circumstance to be considered. The instruction here complained of was calculated to give the jury to understand that while 'inequality and unreasonableness in a testamentary disposition of property' is not conclusive, it is evidence of unsoundness of mind or undue influence to be considered by the jury. The vice of the instruction is that it conveys the impression to a jury that it should consider 'inequality and unreasonableness in a testamentary disposition of property' primarily as evidence of unsound mind or undue influence." To the same effect is *Abrahams* v. *Woolley,* 243 Ill. 365. Instruction 9 in this case goes even beyond calling the attention of the jury to an unequal disposition of the property of the testatrix, by characterizing such distribution as a discrimination against the contestants and in favor of the proponent.

Contestants' instruction 13 told the jury that the testatrix, in order to make a valid will, must have had, at the time of the execution of the same, an intelligent comprehension of the surrounding circumstances and of their direct and probable result. The rule is that the testator shall, at the time the will is executed, have the capacity to com-

prehend all that the will contains, but the rule does not require that he shall actually comprehend all such matters. (*Dowdey* v. *Palmer,* 287 Ill. 42; *Yoe* v. *McCord,* 74 id. 33.) There is a marked difference between actually understanding all the terms of a will or the possible or probable result of the same, and possessing the capacity to do so. The rule is that the testator must have the latter. This is a distinction which public policy dictates and the law requires in order to preserve the right and power of testamentary disposition. It would be difficult to say that anyone, though in possession of his mental faculties in full strength, can with certainty know and fully comprehend all the direct consequences and probable result of his will. The law does not require that he do so. Instruction 13 fails to recognize this distinction and should not have been given.

Appellees contend that appellant cannot now seek the benefit of any error in the instructions for the reason that instructions on the same propositions were given at his request. No instruction given by the appellant presents as a rule of law the propositions presented in the instructions complained of. While instructions given for the proponent told the jury that they had nothing to do with the question of the manner of distribution of the property by the will, yet such instructions cannot be held to have cured the error in the instructions in question. The instructions in this case, as a series, gave to the jury an erroneous understanding of the law.

As this case must be reversed for the reasons given, it is neither necessary nor proper to consider the weight of the evidence.

The decree is reversed and the cause remanded for a new trial.                    *Reversed and remanded.*