(No. 19122. ▮▮▮▮▮▮▮▮)
RALPH MAHER *et al.* Appellants, *vs.* CHARLES B. MAHER *et al.* Appellees.

*Opinion filed February 21, 1930.*

MacCHESNEY, EVANS & ROBINSON, and JOHN A. DOW-DALL, for appellants.

ARCHIE G. KENNEDY, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellants, Ralph and Helen Maher, filed their bill in the circuit court of DeKalb county to contest the will of their uncle, William H. Maher, on the grounds of the mental incapacity of the testator and undue influence on the part of Margaret E. and Charles B. Maher, who were a

sister and brother of the testator. Two brothers, a sister and certain nieces and nephews of the testator were made parties defendant to the bill, but later all defendants except Margaret E. and Charles B. Maher were made complainants. An answer was filed denying the allegations of the bill. There was a trial by jury and a verdict sustaining the will. The jury answered three special interrogatories submitted by appellants, the answers being that the testator was of sound mind at the time the will was executed, that the instrument was his last will and testament, and that appellees were not guilty of undue influence. To review the decree an appeal has been prosecuted to this court.

It is urged that the decree is contrary to the evidence. The evidence shows that the testator died in DeKalb county on October 15, 1923, at the age of forty-eight years. On October 10, 1923, he executed the will in question, by which he left all of his property to his brother and sister, the appellees. Charles B. Maher, the brother, was named as executor. The will recited that in making it the testator had not forgotten his other brothers and sister but it was his desire that his property be distributed as therein provided. He originally had four brothers, John, Thomas, James and Charles, and three sisters, Margaret, Katherine and Mary. John disappeared many years ago and nothing has been heard from him since that time. James, Thomas and Mary married and left home, leaving the testator, appellees and Katherine at home on the farm with their father and mother. The father died in 1899, Katherine died in 1908 and the mother died in 1916. The testator and appellees continued to live on the farm until the testator's death. None of them ever married. On January 27, 1917, James, Thomas and Mary, for a consideration of $3000, conveyed to the testator and appellees all their interests in the estates of their father, mother and Katherine. Thomas and Mary died after this bill was filed, leaving children, who were parties to the bill.

Many years before his death the testator fell down a stairway and injured his head, from which injury it is claimed he never recovered. There was evidence tending to show that he had a tumor in the head; that he had Jacksonian epilepsy, which is caused by pressure on the brain, and that at times he had attacks of unconsciousness. At the time of his death he had heart trouble, Bright's disease and high blood pressure. On September 15, 1923, he had a cerebral hemorrhage. His left side and eye were affected. After the attack he was able to leave his bed, was around the house and went to town. About October 5 he had a second attack. Even after the second attack he was able for several days to leave his bed, but he gradually grew worse until his death, ten days later.

On October 10, 1923, Judge H. W. McEwen, of the city court of DeKalb, was called to the testator's house by Charles Maher to draw the will. The testator was up and dressed at that time. He explained to Judge McEwen how he wanted to dispose of his property, and the will was drawn in accordance with his directions. Two neighbors were called in as witnesses. The will was read to the testator, who stated that it was the way he wanted to dispose of his property, and it was so executed. One of these witnesses died before the trial, but Judge McEwen and the other witness testified that in their opinion the testator on that occasion was mentally capable of executing a will. Dr. C. D. Carter, who had known the testator thirty or thirty-five years, was called to attend him on September 15, the day the testator had his first stroke. He saw the testator at frequent intervals, almost daily, until the day of his death. He testified he saw him on the day the will was executed and talked to him about the will, and that in his opinion he was competent to transact business. The other witnesses testified they saw the testator after the will was executed and a day or two prior to his death, and that he was mentally competent at that time to make a will. Two·

or three witnesses testified to conversations which they had with the testator some time prior to his last illness, in which he stated that he wanted all of his property to go to appellees.

Five witnesses were called by appellants. The testimony of three of them was limited to the time when the testator fell down stairs. They were not asked to express an opinion as to his mental condition although all of them had known him for many years, and one of them was a doctor who had treated him. The only witnesses for appellants who testified to the mental inability of the testator were two doctors, one of whom never saw him. In answer to a hypothetical question both of them testified that in their opinion he was mentally incompetent to make a will. One of them, on cross-examination, when other facts were put into the question, stated that the testator might have been mentally competent. In their briefs counsel for appellants do not claim that the testator was mentally incompetent prior to his second stroke, on October 5, but they claim that after that date he was mentally incompetent.

Attention is called in the briefs and arguments to various conflicting and contradictory statements which are alleged to have been made by some of the witnesses for appellees. No good purpose would be served in considering these statements in detail. This court will not disturb the verdict of a jury in a contested will case unless it is manifestly against the weight of the evidence. (*Voodry* v. *University of Illinois*, 251 Ill. 48; *Hurley* v. *Caldwell*, 244 id. 448; *Smith* v. *Henline*, 174 id. 184.) When the evidence in this case is considered as a whole, the decree is not manifestly against the weight of the evidence but is in accord with it.

Complaint is made that the court improperly admitted in evidence the settlement made on January 27, 1917, by the testator and appellees with reference to the estates of the testator's father, mother and sister, and that the court improperly admitted certain conversations with the testa-

tor in which he stated that he wanted his property to go to appellees at his death. In a will contest where want of mental capacity is charged, it is proper to prove the mental condition of the testator for a reasonable length of time both before and after the time the will was executed, together with the circumstances attending the execution of the will, facts showing the family relations, the inequality of the distribution, and the facts and explanation thereof. Under some circumstances it is competent to prove the source and extent of the estate, the financial condition of the relatives if known to the testator, advancements made to them, and other facts which might show the relation of the distributees. (*Barnes* v. *Odum,* 304 Ill. 624; *Petefish* v. *Becker,* 176 id. 448.) This bill was filed upon the ground of the mental incapacity of the testator to transact business. It was not limited to the mental incapacity subsequent to the second stroke. The burden of proof was upon appellees to establish the mental capacity of the testator by the preponderance of the evidence, and they were required to offer all evidence of mental capacity in chief. (*Donovan* v. *St. Joseph's Home,* 295 Ill. 125.) Appellees did not know at the time they offered their evidence that the claim of appellants as to the mental capacity was to be limited to the time after the second stroke, therefore it was incumbent upon appellees to offer all this evidence in chief. The settlement agreement was admissible because it showed the mental capacity of the testator at that time to transact business. It was a part of the family history, which the jury had a right to know in arriving at their verdict. It was admissible to show why the testator preferred appellees in the disposition of his property. The conversations of the testator with the various witnesses as to the disposition of his property were admissible because they showed that at a time when there was no doubt as to the testamentary capacity of the testator he had made statements to these friends that he wanted appellees to have

his property. The fact that the testator made his will according to a plan formed by him long before he had a stroke of paralysis tends to show that at the time the will was made he had sufficient mental capacity to understand the objects of his bounty, the kind and character of his property and to dispose of his property according to a plan previously formed in his mind. For these reasons this evidence was properly admitted.

It is claimed by appellants that counsel for appellees in his argument to the jury improperly commented upon the settlement and the effect thereof. If the settlement was properly admitted in evidence it was subject to comment in the argument to the jury. The whole argument does not appear in the record but brief sketches of it are called to our attention. We do not think there was any error in any of the remarks made.

Complaint is made of the seventh, eighth and ninth instructions on behalf of appellees. Each of these instructions told the jury that the law presumes, and it was their duty to presume, that every man who has arrived at years of discretion is of sound mind and memory and capable of disposing of his property by will until the contrary is shown. It is insisted that such an instruction has been condemned in *Donovan* v. *St. Joseph's Home, supra.* The objection to the instruction in the *Donovan case* was, that after stating this presumption it concluded by saying that this presumption cast upon those who contest a will the burden of establishing by the greater weight of evidence that the person seeking to make the will was not at the time of sufficient mind to make a valid will, which is not the law. There is no such statement in any instruction complained of in this case, therefore the *Donovan case* is not controlling. There is no question in this case but that the will was executed in accordance with statutory requirements. In the following cases, where there was no such controversy, an instruction similar to the instructions in

this case was approved. *Grosh* v. *Acom,* 325 Ill. 474; *Harris* v. *Etienne,* 315 id. 540; *Wickes* v. *Walden,* 228 id. 56; *Craig* v. *Southard,* 162 id. 209.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*