Lena Capner, Appellant, v. Francis X. Holbrook, as Executor of the Last Will and Testament of Charles E. Hammerly, Deceased, and Carrie Rock, Appellees.

Gen. No. 36,699.

200

Opinion filed December 29, 1933.

JAMES F. HUTCHISON, for appellant.

ROBERT L. WEISS, for appellee Carrie Rock; WILLIAM E. RAFFERTY, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This appeal is prosecuted by complainant, Lena Capner, to reverse a decree of the circuit court of Cook county, entered January 21, 1933, wherein the court, in a proceeding instituted under a provision of section 7 of the "Act in regard to Wills" (Cahill's St. 1931, ch. 148, ¶ 7, p. 2763), adjudged and decreed that the instrument in writing offered in evidence purporting to be the last will and testament of Charles E. Hammerly, deceased, "is his last will and testament," and that complainant's bill "be and is hereby dismissed for want of equity."

In the preamble of the decree it is stated in substance that the cause came on to be heard upon complainant's bill, the several answers of the executor and of Carrie Rock and complainant's replications thereto; that the court had theretofore ordered that "an issue at law be made up whether the writing produced, purporting to be the will of Charles E. Hammerly, deceased, is his last will and testament or not"; that the court had called a jury to determine that issue; that the jury had returned a verdict finding "that said writing is the last will and testament of Charles E. Hammerly, deceased"; and that complainant's motion to set aside the verdict and for a new trial had been overruled,

After the transcript of the record had been filed in this court, and after the printed brief of complainant as well as that of Carrie Rock had been filed, the death of Francis X. Holbrook was suggested, and this court was advised that the Northern Trust Company had been appointed by the probate court of Cook county on June 3, 1933, as executor of the estate of said Hammerly, in place of Holbrook, and had qualified and was acting as such executor. Thereupon, on motion of the Northern Trust Company, it here was ordered that it, as such executor, be substituted as one of the appellees, in place of Holbrook, deceased, and further that it be permitted to adopt, as its brief and argument, the brief and argument of Carrie Rock, theretofore filed.

In complainant's bill, filed December 20, 1930, she alleged in substance that Charles E. Hammerly was her brother; that he died in Chicago on January 7, 1929, leaving complainant as his only heir-at-law and next of kin; that on the preceding day (January 6th, Sunday) he "made a purported last will and testament"; that on May 17, 1929, the probate court of Cook county entered an order *denying* the probate of the will, "from which order an appeal was taken to the circuit court of Cook county" (evidently under the provisions of sections 13 and 14 of said "Wills" Act, Cahill's St. ch. 148, ¶¶ 15, 16); that afterward, on December 23, 1929, the circuit court ordered that the will be admitted to probate and the same "was received and admitted to probate"; that "no appeal was taken from said order, which remains in full force and effect"; that afterward, on January 9, 1930, letters testamentary were issued by the probate court to Holbrook as executor and he qualified as such.

Complainant further alleged in the bill that "at the time of the execution of said supposed instrument," Hammerly was not of sound mind and memory but on the contrary his mind and memory were so impaired as

to make him wholly incapable of making any just and proper distribution of his estate"; that in the will, in addition to complainant, Charles C. Capner (husband of complainant) and Margaret Capner are named as legatees; that complainant has a daughter named Marguerite and complainant believes that she was the intended legatee; that "a purported person by the name of Mrs. C. Rick" is also named as a legatee; and that the purported will should in equity and good conscience be held not to be the last will of Hammerly, and that the judgment of the circuit court admitting the instrument to probate should be set aside and held for naught.

There is contained in the present record a photostatic copy of the instrument in question. It was introduced in evidence by the proponents (Holbrook, as executor, and Carrie Rock), is on two sheets of paper and is written in ink in longhand. From an examination of said copy it is difficult for us to determine whether the name, as written, of the principal legatee is "Rock," "Rick" or "Reck." After the usual preamble, the instrument is as follows:

"1st. I give, bequeath to my sister, Mrs. Lena L. Capner of Chicago, the sum of one dollar ($1.00).

"2nd. After all of my funeral expenses and all my just debts are paid I give and bequeath to my brother-in-law, Chas. C. Capner, and my niece, Margaret Capner, the sum of one dollar ($1.00).

"3rd. All the balance of my estate of every kind or nature, both real and personal and wheresoever situated, I give, bequeath to my only real & true friend, Mrs. C. Rock, 2333 W. Adams St., Chicago.

"4th. I hereby appoint Francis X. Holbrook my executor of my estate and in the event of the death of my said executor then I appoint the Northern Trust Co. of Chicago.

"In witness whereof this 6th day of January, A. D. 1929.

(Signed)    CHARLES E. HAMMERLY

"We, the undersigned witnesses to the above last will and testament of Chas. Hamerly, hereby declare that we sign same in the presence of the testator and in the presence of each other, that same consists of two pages written in longhand.

(Signed)   R. S. Sullivan,
2331 W. Adams.
Harry O. Baker
2325 Adams."

The separate answers of Holbrook, as executor, etc., and Carrie Rock, are substantially the same. The execution of the will by Hammerly and his death on the following day are admitted. It is also admitted that the will was at first refused probate by the probate court, but that on appeal to the circuit court on a trial *de novo* the circuit court ordered that it be admitted to probate and that it was admitted to probate in the probate court and letters testamentary issued to said Holbrook on January 9, 1930, and that he qualified as such, etc. And each defendant denied that at the time of the execution of the will Hammerly was not of sound and disposing mind and memory, alleged that the contrary was the fact, and further alleged that the defendant, Carrie Rock, is the principal legatee named in the will.

The present record further discloses that early in the trial, commenced on January 6, 1933, and completed on January 10, 1933, the court entered the following order:

This cause having come on to be heard upon the pleadings filed, and the issues made up by the pleadings, it is ordered that the following issue of fact be made and tried by a jury, to wit:

1. Was the writing read in evidence, purporting to be the last will and testament of Charles E. Ham-

merly, deceased, the last will and testament of Charles E. Hammerly, or not?

The record further discloses that the proponents first offered in evidence ''a certificate of the testimony in the probate court on the offer of the will.'' The offer was objected to by complainant's counsel, and after argument had out of the jury's presence the court admitted the same in evidence. The objection was not on the ground that the testimony had not been correctly transcribed or that the certificate was not in proper form. From the certificate it appears that Harry Baker, one of the subscribing witnesses to the instrument, testified in the probate court on direct examination in substance as follows:

That he lived at 3225 West Adams street, Chicago; that he had known Hammerly for about six years prior to his death; that he signed the will as a witness at Hammerly's request and in his presence at the Cook County Hospital on January 6, 1929; that he saw Hammerly sign the will; that he also saw R. S. Sullivan sign the will as the other subscribing witness in Hammerly's presence; that Roy C. Holbrook, who drafted the will, was present at the time; that the will as now shown to him (the witness) is in the same condition as when it was executed; that at that time Hammerly did not have any children and did not thereafter contract any marriage; and that at the time Hammerly signed the will he (the witness) ''believed and now believes that Hammerly was of sound and disposing mind and memory.'' On cross-examination Baker further testified in substance that Hammerly for several years preceding had lived at the home of R. S. Sullivan, 2331 West Adams street; that he (the witness) then lived about ''three lots away'' at 2325 West Adams street; that he frequently saw Hammerly and had had business relations with him; that Hammerly had been in the business of doing repair work on auto-

mobiles, and that he (the witness), being a painter by trade, had at times and in various ways assisted him in his work; that a few days before January 6, 1929, Hammerly became ill; that his attending physician told him (the witness) that Hammerly had pneumonia; that on Sunday morning, January 6, 1929, he (the witness), at Hammerly's request, called upon him at the Sullivan house and talked with him; that later in the day Hammerly, on the advice of said physician, was conveyed in an ambulance to the Cook County Hospital; that Sullivan and the witness followed in an automobile and arrived at the hospital about the same time; that Hammerly was wheeled into the receiving room; that while he was there he (the witness) talked with him and that Hammerly "talked rational" and told some one to "call up his attorney for him"; that later the attorney (Roy C. Holbrook) came and he and Hammerly talked alone together; that after the attorney had drafted the will at the hospital, he (the witness) and Sullivan were again called into the room and they saw Hammerly sign the will and they afterwards signed it as subscribing witnesses in his presence; that at the time Hammerly was on a "stretcher" or "cart"; that before he signed the will he "sat up," "put on glasses," and "read the will himself"; and that after the will had been executed he (the witness) left the room and the hospital, and did not thereafter see Hammerly alive.

Robert S. Sullivan, the other subscribing witness to the will, testified in the probate court in part as follows:

That he lived at 2331 West Adams street; that he had known Hammerly for 25 years; that for about 6 years prior to his death, Hammerly had lived at the home of the witness; (will shown witness) that "this is my signature"; that "I signed this as a witness"; that "when I signed Roy C. Holbrook, Baker, Ham-

merly and myself were present''; that ''so far as I can see the instrument is now in the same condition as when I signed it''; that ''when I signed it I did *not* believe that Hammerly was of sound mind and memory''; that he was not of sound mind and memory because of ''all the time he was sick''; that he (the witness) signed the will as a witness because he was asked to do so; that he ''knew it was a will'' but that he ''didn't read it''; that he ''first believed that Hammerly was not of sound mind and memory when he first took sick on Wednesday, January 2nd, at night''; that when Hammerly signed the will he sat up on a cot and ''wore my glasses but he couldn't see through them''; and that Carrie Rock is ''my sister-in-law; she lived next door to me.''

Thereupon on the trial of the present cause the original will was offered by proponents and admitted in evidence by the court over the objection of complainant's counsel that ''there is not sufficient proof; one witness denies it and one doesn't.'' Proponents' counsel stated that he expected to introduce further evidence, and it was agreed that later in the trial a photostatic copy of the original will might be substituted therefor.

Thereupon the proponents called six witnesses, four of whom testified as to the mental condition of Hammerly on the day the will was executed at the hospital on Sunday, January 6, 1929, viz., Michael Pape and Jack Turco, friends of Hammerly; Roy C. Holbrook, who drafted the will at the hospital and attended to the details of its execution; and Dr. Paul V. Carelli, physician at the hospital who interviewed Hammerly, examined him and took the customary statement from him just after he arrived. (This statement was written out and became a part of the hospital's record ''concerning Charles E. Hammerly,'' and was introduced in evidence by proponents.) Each of the four

witnesses testified in substance that they believed Hammerly was of sound mind on that Sunday. Holbrook testified in substance that he drafted the will in accordance with instructions given to him in the hospital by Hammerly, that Hammerly at the time of the signing of the will and prior thereto was "absolutely of sound mind," and that he had the mental capacity "to know who his relations were" and "to understand the ordinary business affairs of life." Loula J. Black, proponents' witness and medical record clerk of the hospital, testified in substance that from said record it appears that "Hammerly entered the hospital on January 6, 1929, at 2 p. m. and he there died on January 7, 1929, at 8:10 a. m." From the testimony of proponents' witness, C. E. Lewis, an attorney-at-law, it appears that in 1928, Hammerly consulted him about filing a bill against complainant for the partition of certain Chicago real estate, which Hammerly and complainant had inherited from their deceased mother, Adaline C. Hammerly, and which they held in joint tenancy, and that he (Lewis) on April 24, 1928, filed in the circuit court of Cook county such a bill in Hammerly's behalf against his sister in cause No. B-161554, entitled *Charles E. Hammerly v. Lena L. Capner.* This bill and Mrs. Capner's answer thereto were introduced in evidence by proponents without objection, as well as an order of the circuit court, entered October 23, 1928, whereby, the litigation having been settled, the suit was dismissed by stipulation of the parties without costs. Proponents were unable to procure as a witness Harry Baker, one of the subscribing witnesses to the will. It appears from the testimony of Roy C. Holbrook that efforts to locate him in Chicago were unsuccessful and that the only information obtained as to his whereabouts was that he had left the city and had gone to Florida.

On the trial, on behalf of complainant (contestant), the main witness called was said Robert S. Sullivan, who testified in substance on direct examination:

That he is a clerk working for the Pennsylvania Railroad Company; that he had resided at 2331 Adams street for about 11 years; that he had two rooming houses there; that Hammerly had roomed and boarded there for over 6 years; that he first learned that Hammerly was ill on the evening of Wednesday, January 2, 1929; that a physician (Dr. Hersh) was called and attended him; that on the following evening pneumonia developed and he appeared to be delirious and very sick; that several people in the rooming house took turns sitting up with him on that night and succeeding nights; that on Sunday morning his condition was worse; that on said physician's advice, he (the witness) made arrangements to take him to the hospital that morning and he was conveyed there in an ambulance; that after the hospital physician and other attendants had examined him, etc., Roy C. Holbrook arrived and, after conversing alone with Hammerly, went into another room and after a while returned; that "we raised up the mattress and I folded my overcoat under the mattress so he could sit up while Mr. Holbrook talked to him and I walked away"; that "nothing was said to me about witnessing a will," and "I didn't hear the word will used at any time"; and that in his (the witness') opinion Hammerly at the time "was *not* of disposing mind and memory."

On cross-examination Sullivan testified in substance:

That "I didn't know that Hammerly was making a will"; that "I didn't know I was witnessing a will"; that "I testified in the probate court that 'He sat up when the attorney came that done the business and told us to go off and wait outside, and afterwards we come and witnessed him sign it' "; that "I let Hammerly have my glasses, but he couldn't see through

them''; that ''he appeared to read it (the instrument), just like he was glancing over it''; that ''I may have testified in the probate court that 'he held it in his hands and he put on the glasses to see if he could read it; he said he could, and he read it and signed it' ''; that he (the witness) has filed a claim in the probate court against Hammerly's estate for $2,600; that he paid Dr. Hersh $15; that he had never discussed the will with any of complainant's witnesses; that he never made any arrangement with complainant about the allowance of his claim in case she won the present suit; that he gave Hammerly his board, lodging and clothing for five years; that Hammerly never did anything for him; that in his claim filed in the probate court is included $200, paid by him and his wife during the last 2 or 3 years, for insurance premiums on two policies of life insurance held by Hammerly; that he had known complainant (Mrs. Capner) since he was a boy; that she quite often visited Hammerly at his home; that they had trouble towards the end; that he knew they had had a lawsuit, but he did not know that they had settled it; and that ''had I known that, he never would have went to the County Hospital.''

Several other witnesses, friends or acquaintances of Hammerly, were called by complainant, and each gave testimony to the effect that on days prior to Sunday, January 6, 1929, he appeared to be a ''very sick man'' and to be ''delirious'' at times. Dr. William H. Hersh, his attending physician on days prior to his removal to the hospital, expressed the opinion that on Saturday night he ''did *not* consider him to be of sound and disposing mind and memory,'' and stated that he saw ''no reason why his condition should or could improve'' and that on said Saturday night he ''was in a mild delirium.''

One of the contentions of counsel for complainant is in substance that the decree appealed from should

be reversed because the verdict of the jury, viz., that the written instrument in question "is the last will and testament of Charles E. Hammerly, deceased," is against the weight of the evidence on the issue whether or not, at the time the instrument was executed, Hammerly was of sound and disposing mind and memory. After a consideration of all the evidence we are unable to agree with the contention. What is said in the contested will case in chancery of *Smith v. Henline,* 174 Ill. 184, 191, we think is here applicable, viz., "The evidence, particularly upon the question of mental capacity, is conflicting, but a careful consideration of it does not show that the finding of the court below is clearly against its weight. Where the testimony is thus conflicting and is not clearly against the weight of the evidence, the finding of the jury must be regarded as conclusive." (See, also, *Maher v. Maher,* 338 Ill. 102, 106.)

Counsel also contends that the court committed error in admitting in evidence the duly certified transcript of the testimony taken in the probate court when probate of the instrument in question was first asked. The argument is in substance, as we understand it, that because the probate court on said testimony had *refused* to admit the instrument to probate, and notwithstanding the fact that on appeal from said order of refusal and after a trial *de novo* the circuit court had ordered its admission, and the same had in the probate court *been admitted,* it was error to admit such testimony. We cannot agree with the contention or argument.

Presumably, proponents' offer of the transcript of the testimony of the subscribing witnesses, given under oath in the probate court, was made because of the provision following the last proviso of said section 7 of the "Wills" Act, Cahill's St. ch. 148, ¶ 7, which reads as follows:

"And in all such trials by jury as aforesaid the oath of the subscribing witnesses taken, reduced to writing and filed in court at the time of the first probate, properly certified to, shall be admitted as evidence and have such weight as the jury shall think it may deserve."

It is provided in the first proviso of said section 7 of the Act:

"That if any person interested shall within one (1) year after the probate of any such will, testament or codicil in the County Court as aforesaid, appear and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the Circuit Court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, *according to the practice in courts of chancery in similar cases;* but if no such person shall appear within the time aforesaid, the probate, subject to the provisos hereinafter set forth, shall be forever binding and conclusive on all parties concerned, saving to infants or *non compos mentis,* the like period after the removal of their respective disabilities."

And it is provided in sections 13 and 14 of said Act (Cahill's St. 1931, ch. 148, ¶¶ 15, 16, p. 2764) as follows:

"Sec. 13. When the probate of any will and testament shall have been *allowed or refused* by any county or probate court, and an appeal shall have been taken from the order or decision of such court, *allowing or refusing* to admit such will to probate, into the circuit court of the proper county, as provided by law, it shall be lawful for the party seeking probate of such will to support the same, on hearing in such circuit court, *by any evidence competent to establish a will in chancery;* and in case probate of such will shall be

allowed on such appeal, *it shall be admitted to probate,* liable, however, to be subsequently contested, as provided in the case of wills admitted to probate in the first instance.

"Sec. 14. Appeals may be taken from the order of the county court, *allowing or disallowing* any will to probate, to the circuit court of the same county, by any person interested in such will, in the same time and manner as appeals may be taken from justices of the peace, except that the appeal bond and security may be approved by the clerk of the county court; and the trials of such appeals shall be *de novo.*"

It is well settled by decisions of our Supreme Court that in a chancery proceeding to contest the validity of a will under said section 7 of the "Wills" Act, where the will had been admitted in the probate court, the admission of the testimony of the subscribing witnesses given in the probate court is proper. (*O'Day v. Crabb,* 269 Ill. 123, 128; *Baker v. Baker,* 202 Ill. 595, 615, 616; *Kellan v. Kellan,* 258 Ill. 256, 270.) In *Estate of Mary Kohley,* 200 Ill. 189, on appeal to the circuit court from an order of the probate court refusing the probate of the presented will, and where the circuit court after a trial *de novo* ordered its probate, it is said (p. 192) that "on the appeal proponent was not limited to the testimony of the subscribing witnesses, and was entitled to introduce any evidence which would be competent to establish the will in chancery." (See, also, *Thompson v. Owen,* 174 Ill. 229, 239; *Senn v. Gruendling,* 218 Ill. 458, 461.) And in *Voodry v. Trustees University of Illinois,* 251 Ill. 48, 50, 51, a chancery proceeding to set aside a probated will on the sole ground of the lack of testamentary capacity of the testatrix (and where, as in the present case, the *execution* of the will was alleged in the bill and admitted in the answer) the same rule was held to be applicable. Considering the sole issue as made by the

pleadings in the present case, the admitted evidence on that issue, and the statutes and decisions above mentioned, we fail to see wherein the admission of said transcript constituted error, particularly, where it appears that the testimony of one of the subscribing witnesses, Sullivan, was adverse to proponents on the issue of Hammerly's mental capacity at the time the will was executed.

Complainant's counsel also contends that because the proponents failed to prove by the *two* subscribing witnesses that at the time of the execution of the will they believed Hammerly to be of sound mind and memory, the court erred in not directing the jury, as requested, to return a verdict in complainant's favor. We find no merit in the contention. In *McCune v. Reynolds,* 288 Ill. 188, 198, it is said: ''This is not a proceeding to probate a will but to set aside a will probated. On the contest of a will by bill in chancery when the execution and probate of the will are admitted by the bill and the only issue is the soundness of mind of the testator, it is not essential that the subscribing witnesses should be called to prove either the due execution of the will or the testamentary capacity of the testator. (*Graybeal v. Gardner,* 146 Ill. 337.)''

And we do not think that the court committed error, as contended, in not allowing complainant's witness, Kilmer (who testified that he saw Hammerly on Sunday morning before he was taken to the hospital), to express his opinion as to whether or not Hammerly was then of sound and disposing mind and memory. The witness did not testify as to any circumstances, incidents or conversation occurring at the time. In *Baddeley v. Watkins,* 293 Ill. 394, 406, it is said: ''Non-expert witnesses should not be permitted to give an opinion regarding the mental condition of a testator until it is shown by a preliminary examination that they have had an acquaintance long enough and inter-

course frequent enough to enable them to observe the mental condition of the testator. . . . Unless the witness details conversations, incidents, facts and circumstances sufficient to impress the mind of the man of common experience that the witness has a knowledge of testator's mental condition and that his opinion is not a guess, supposition or speculation, the court should not permit the witness to express an opinion.'' (See also *Britt v. Darnell,* 315 Ill. 385, 400, 401.)

Nor do we think that the court committed error, as contended, in allowing in evidence the exhibit, offered by proponents, containing the bill, answer and subsequent dismissal of the partition suit commenced by Hammerly in 1928 against complainant, his sister, above referred to. When the bill and answer were first offered complainant's counsel did not object but stated that he thought ''all the files should go in,'' and the record discloses that the exhibit was admitted practically by agreement. It is, therefore, unnecessary to discuss the question whether the exhibit was admissible as tending to show Hammerly's state of mind when he executed the will in question, as is argued by proponents' counsel.

Complaint is also made by counsel of the refusal of the court to give instructions Nos. 2, 3 and 4, offered by complainant. We have examined these instructions, as well as all of the given instructions, and are of the opinion that the jury were sufficiently and fairly instructed, and, considering the entire evidence, that no error was committed by the court by said refusal.

Finding no reversible error in the record the decree of the circuit court, appealed from, is affirmed.

*Affirmed.*

Sullivan, P. J., and Scanlan, J., concur.