THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD THOMAS, a/k/a Lonnie Jenkins, *et al.*, Defendants-Appellants.

First District (1st Division)  No. 78-391

Opinion filed May 7, 1979.

James J. Doherty, Public Defender, of Chicago (Vito A. Colucci and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Rimas F. Cernius, and Michael Levitin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendants were convicted of robbery and

sentenced to 5½ to 16½ years in the penitentiary. (Ill. Rev. Stat. 1977, ch. 38, par. 18—1.) On appeal, defendants contend (1) the trial court erred in discharging a juror who did not arrive on time and replacing the juror with an alternate (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(g)), and (2) they were denied a fair trial by the prosecution's closing arguments.

David Baldeshwiler testified that during the early morning hours at approximately 2:30 a.m., he worked at a gas station which is located in Lansing, Illinois. The station was well lit outdoors and the lights were on inside the office when three black men approached and asked if he had a telephone. He identified two of these men as defendants; Thomas carried an 8-track tape player and the third man carried a C.B. radio. He told them he did not have a pay telephone and the men left. Several minutes later, defendants returned. Parson entered the office and asked how to get a dial tone on the telephone. When he told Parson he could not get a dial tone on that telephone, Thomas jumped him from behind, then removed $131 from his pocket. At this time a car was driven into the station and Parson went outside to take care of it. Another car pulled into the station and defendants asked this witness if he could take care of it without appearing nervous; he said that he could. He went outside, followed by Thomas, and noticed a police officer sitting in a car in the restaurant parking lot across the street. Defendants told him he would not get hurt if he did not tell the police. But when defendants left, he ran across the street to the restaurant parking lot and told Lansing Police Officer Galloway that he had been robbed. About 6:20 a.m., two police cars pulled into the station and this witness identified defendants, who were in the back seat.

Lansing Police Officer Galloway testified that he was parked approximately 150 to 250 feet away from the service station in the restaurant parking lot. He noticed two black subjects in the station. He first saw Parson come out of the station and go to a pump. And when another car entered, a white attendant came out followed by Thomas. A short time later, the attendant ran to his vehicle to report the robbery. He placed a message on the police radio network.

Lansing Police Officer Beckman testified he received a radio call from Officer Galloway's unit stating that there had been a robbery at the gas station. He found a C.B. radio and an 8-track tape player behind the restaurant across the street from the gas station. At approximately 6 a.m., he received a radio dispatch that South Holland police had observed two subjects hitchhiking. He proceeded to that location and transported defendants in his car to the station where Baldeshwiler identified them. This witness recovered $89 in cash, 3 ten-dollar bills, 1 five-dollar bill, and 54 singles.

Melvin Ray Parson testified on direct examination that he had been convicted of armed robbery and was released from prison August 23,

1976. He admitted that he was in the gas station, but he denied committing the robbery. He claimed that he was on his way to Indiana earlier that evening when he had an accident, and a State trooper dropped him and Thomas off at the gas station. He asked the attendant if he could use the telephone, but was told there was no dial tone. Since he knew how to get the operator on the telephone by tapping the receiver, the attendant allowed him to try, but he could not get the operator. He saw a police officer in the service station at that time. After he left the gas station, he was picked up hitchhiking on the expressway, accused by Officer Galloway of robbing the station, and driven back to the station.

On cross-examination, he admitted that he had a C.B. radio and an 8-track tape player in his car, but claimed he had them with him when he was picked up by the police. He also said that he had about $33 on him, much of which consisted of $1 bills.

Officer Beckman testified in rebuttal that he found the 8-track tape player behind the restaurant between 3:15 and 3:30 a.m. and defendant did not have an 8-track tape player when arrested.

Defendants first claim an abuse of discretion occurred when the trial court discharged a juror who was late and replaced her with an alternate juror. In this case, on November 3, 1977, the court dismissed the jury at the close of the State's case-in-chief telling them to return at 11:30 the following morning. At noon on November 4, the assistant State's Attorney informed the court that one of the jurors had missed the bus and was downtown; he requested that an alternate replace that juror. The assistant public defender objected. The court discharged the juror and replaced her with an alternate, explaining that to delay the trial would inconvenience the other jurors and the court. The court observed that darkness fell at an early hour, that the absent juror was in downtown Chicago, one hour away, that this was the last day of the week and the court intended to complete the trial and submit the matter to the jury that day.

The statute applicable herein (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(g)) provides:

> "If before the final submission of a cause a member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection."

The Committee Comments state that this provision was intended to change the law to specifically provide for alternate jurors as permitted in civil cases. The Joint Committee Comments to section 66(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 66(2)) indicate that the 1933 Civil Practice Act contained no provision for alternate jurors, so that if a juror was unable to continue to serve, the court was required to adjourn the trial until the juror was able to resume. The new procedure was authorized to avoid the inconvenience, expense, delay and waste resulting

from the disability of one or two jurors and the Joint Committee Comments specifically state that the impaneling of alternate jurors "is left to the discretion of the trial court." (Ill. Ann. Stat., ch. 110, par. 66, Committee Comments, at 289 (Smith-Hurd 1968).) Thus, the discharge of a juror and the impaneling of an alternate is an act of discretion by the trial judge and there must be a showing of prejudice in order for a reversal to be required. Compare *People v. Peterson* (1910), 153 Ill. App. 480; *People v. Bedard* (1957), 11 Ill. 2d 622, 628, 145 N.E.2d 54; *Siebert v. People* (1892), 143 Ill. 571, 32 N.E. 431.

■■ The action of the trial court in this case was consistent with the purpose of the statute to avoid the unnecessary expense, time and delay that would have been entailed in waiting for the tardy juror to appear. Had the trial court waited, there would have been a delay and the trial would have continued until Monday, resulting in additional inconvenience and expense. The procedure followed by the trial court was proper, and did not prejudice defendants. This issue has no merit.

■■ ■ Defendants also maintain they were denied a fair trial by the arguments of the prosecuting attorneys. Defendants first complain of arguments in which, they contend, counsel improperly voiced an opinion that defendants had lied. Defendants' failure to object has waived these arguments for review. (*People v. Utinans* (1977), 55 Ill. App. 3d 306, 370 N.E.2d 1080; *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838.) Nevertheless we have examined these comments and find they were proper comments on the evidence and on the credibility of the witnesses. It is proper to argue that a witness' testimony is false if such argument is based on the evidence presented and the defendant's testimony was both impeached and rebutted. *People v. Jackson* (1974), 19 Ill. App. 3d 689, 695, 312 N.E.2d 405.

Defendants argue the following comment was an improper assertion of facts not proved and amounted to the prosecutor's testimony:

"I would have carried the money for them, do you want a bag to put that in, can I take some oil for you, anything else you want, take it. That's what I would have done."

■ However, when defendants objected, the court admonished counsel, "Please do not inject yourself." This action of the trial court cured the error. *People v. Martinez* (1978), 62 Ill. App. 3d 7, 16, 377 N.E.2d 1222.

■ Defendants did not object to a comment by the prosecutor that he does not "write scripts for people" who are victims, but instead tells them to say "what happened" and that the victim did so. The defendants did object to the following argument in which the prosecutor tried to explain why the victim did not run to the police car when he had a chance:

"They want you to believe why didn't he run, sixteen year old kid, three o'clock in the morning, he didn't know what those guys

had on them, he didn't know whether they had a gun. When your life is on the line maybe sometimes you don't want to take that big of a chance, maybe be shot in the back, we don't know."

Although there was no evidence that Thomas actually had a gun when he followed the victim out of the office, the court found this was fair comment on the evidence. We agree since it tended to explain why the victim did not attempt to flee.

■ Finally, defendants complain of several other comments to which they did not object at trial but which they now claim evidenced a personal opinion of their guilt to the jurors. Even if the comments were read as an improper expression of personal opinion, reversal is not required unless they were a material factor influencing defendants' conviction. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630.) Given the overwhelming evidence against defendants, we conclude that the comments of the prosecutor, if improper, were not prejudicial and did not contribute to the convictions.

Accordingly, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.